## KIRBY ET AL. *v.* UNITED STATES, FOR AND ON BEHALF OF THE CROW TRIBE OF INDIANS.

### ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

No. 126.  Argued November 27, 1922.—Decided December 11, 1922.

A lease of Indian land for cattle grazing, for two years, at a minimum rental of $31,950 per year, provided that the number of cattle to be grazed should " be limited to an average of 9,000 head, the maximum number at any one time not to exceed 11,500 head," and that " any excess over and above such maximum number shall be paid for at the rate of $4.50 per head for each and every head of such excess number," in addition to the rental named. *Held*, reading these with other provisions of the lease and with the written proposal therefor, and considering the subject-matter—

(1) That the average of 9,000 head was for each year separately, to be paid for by the minimum rental, and that the additional charge of $4.50 per head applied to all in excess of that average, and not merely to any excess over 11,500 head grazed at any one time.  P. 425.

(2) The $4.50 charge was neither a penalty nor liquidated damages. P. 427.

(3) The act of one of the two lessees, who was in charge of the leased area, in admitting additional cattle to graze, was the act of both.  P. 427.

273 Fed. 391, affirmed.

ERROR to a judgment of the Circuit Court of Appeals affirming a judgment recovered by the United States in the District Court in an action for rent against two lessees and their surety.

Mr. *M. S. Gunn* and *Mr. Edgar Allen Poe,* with whom Mr. *Carl Rasch,* Mr. *E. M. Hall,* Mr. *O. King Grimstad* and *Mr. Rockwood Brown* were on the brief, for plaintiffs in error.

Mr. *Assistant Attorney General Seymour,* with whom Mr. *Solicitor General Beck* and Mr. *Robert P. Reeder,*

Special Assistant to the Attorney General, were on the brief, for the United States.

Mr. Justice Van Devanter delivered the opinion of the Court.

With the approval of the Secretary of the Interior certain lands of the Crow Tribe of Indians in Montana were leased to George B. Kirby and Charles McDaniels for the grazing of cattle for two years beginning February 1, 1916. A bond, in which the United States Fidelity and Guaranty Company joined as surety, was given by the lessees for the faithful performance of their obligations. The lease required them to pay a minimum rental of $31,950 per year and to abide by the following provision:

"And it is further agreed that the number of cattle to be grazed on the territory described above shall be limited to an average of 9,000 head, the maximum number at any one time not to exceed 11,500 head, and that any excess over and above such maximum number shall be paid for at the rate of $4.50 per head for each and every head of such excess number, in addition to the rental herein named."

The lessees paid the rental of $31,950 for each of the two years, but failed to pay an additional sum claimed under that provision for cattle grazed in excess of the prescribed average.

On behalf of the tribe the United States sued the lessees and the surety company to recover the additional sum so claimed; and the defendants answered denying that there had been any excess grazing. The issues were tried to the court, a jury being waived by written stipulation. The court found that there was no excess grazing during the first year, but that the cattle grazed during the second year exceeded "the contract maximum average of 9,000 head for the year" by what was "equivalent to 6,968 head for one year." For this excess a recovery was allowed at

the rate of $4.50 per head, which was affirmed by the Circuit Court of Appeals. 273 Fed. 391. The defendants prosecute the present writ of error.

The chief controversy is over the meaning and effect of the provision we have quoted from the lease. Pointing to it, the defendants contend (a) that any grazing in excess of an average of 9,000 head was prohibited, and therefore was a trespass for which no recovery could be had in a suit on either the lease or the bond; (b) that the additional payment at the rate of $4.50 per head was to be made only for any excess over 11,500 head grazed at any one time; and (c) that the intended average of 9,000 head was for the full two-year period and not for either year taken separately. Both courts below rejected these contentions.

The provision relied on was loosely framed and, if read alone, might well be regarded as of uncertain meaning. But it is to be read with other provisions of the lease, with the written proposal of the lessees whereby the lease was obtained, and in the light of the conditions which naturally prompted some provision on the subject. When it is examined in this way, the explanation for it and its meaning are shown to be as follows: The parties recognized that pasturage, being an annual crop, is lost if not utilized before the next growing season, and they evidently intended to deal with each year as a distinct period. A minimum rental of $31,950 was to be paid to the lessors for each year. Payment of that sum was to give the lessees the right to graze 9,000 cattle on the leased area for the particular year. But it was not practicable to have a definite number grazing throughout the year, for marketing some and bringing in others would cause the number to vary materially. So, an average of 9,000 head was agreed on. This would permit a shortage in one part of the year to be made up by a corresponding increase in another part. But to prevent this privilege from being carried to extreme lengths, the provision for an average

was qualified by saying "the maximum number at any one time not to exceed 11,500 head." The purpose of that provision, as thus qualified, was to define the grazing which might be done for the minimum rental of $31,950;— in other words, to show that the grazing which might be done without further payment was limited to an average of 9,000 cattle. But the parties recognized the propriety of making some provision respecting the possible grazing of a larger number and the charge to be paid for it. Accordingly, they said in a succeeding clause that " any excess over and above such maximum number shall be paid for at the rate of $4.50 per head." The maximum number there intended was evidently the number which might be grazed for the minimum rental,—that is to say, an average of 9,000 head; for of course the point to which that rental extended must have been the one at which the charge for additional grazing was to begin. It was not intended that any grazing should be free, but, on the contrary, that all that was not covered by the minimum rental should be paid for at the rate of $4.50 per head. The District Court aptly said:

" The language of the lease, that this $4.50 per head is payable for ' any excess over and above such maximum number,' does not necessarily import only cattle over and above 11,500 head, the last antecedent and maximum *eo nomine,* but consistent with the writing and construction can be and is taken to import cattle over and above 9,000 head, the first antecedent and also a maximum, although not in terms so characterized. Nine thousand head are the maximum for the year as a whole, the principal thing, and the 11,500 are the maximum at any time (and for such time as will serve to accomplish the 9,000 maximum), an incidental thing. . . Defendants' argument that by the terms of the lease they are to pay only for excess over 11,500 head, and that for all between 9,000 head and 11,500 head they would be amenable only to the

relevant criminal law applicable to trespassers, is untenable."

The Circuit Court of Appeals construed the lease in the same way, and we think that construction is the correct one. As the three contentions before stated all depend on a contrary construction they must fail.

The $4.50 rate is assailed as being a penalty or liquidated damages, and therefore condemned by a statute of the State. We think it is neither a penalty nor liquidated damages. It was not to be paid for any breach of contract, but as compensation for particular grazing contemplated in the lease and not covered by the rental otherwise fixed. Whether the state statute could affect a contract made by the United States on behalf of Indian wards need not be considered.

At the trial it appeared that the additional cattle were admitted to and grazed on the leased area by one of the lessees, who had special charge of the operations under the lease; and there was a conflict in the evidence as to whether the other lessee consented to, or acquiesced in those acts. The District Court ruled that the conflict was immaterial and that the acts of the lessee in charge were the acts of both. Complaint is made of this, but it obviously was right. *Kendall* v. *Carland,* 5 Cush. 74; *Goshorn* v. *Steward,* 15 W. Va. 657, 664.

*Judgment affirmed.*