## JORDAN FURNITURE CO. v. OKLAHOMA PUBLISHING CO.

No. 24596.    April 23, 1935.

Dudley, Hyde, Duvall & Dudley, for plaintiff in error.

Pierce, McClelland, Kneeland & Bailey, for defendant in error.

PER CURIAM. On April 11, 1932, the Oklahoma Publishing Company commenced its suit against the Jordan Furniture Company in the district court of Oklahoma county, for the sum of $1,539.15, with interest at 6 per cent. per annum from November 19, 1931, until paid. The action was to reecover money alleged to be due on three written contracts for advertising space in the Daily Oklahoman and the Oklahoma City Times. The contracts are practically identical except for the dates, the amounts of space contracted for, and the prices charged for advertising. They are the regular printed form contracts used by the Oklahoma Publishing Company for advertising space in both its newspapers published in Oklahoma City. The first contract is dated November 19, 1928, and runs for a period of twelve months, and is followed by a second contract dated November 19, 1929, which is followed by a third contract dated November 19, 1930. By each of these contracts the furniture company purchased and agreed to pay for a certain amount of space to be used during a twelve-month period, at a specified rate.

The case was tried before the court. Upon the conclusion of the evidence, the court found the issues in favor of the Oklahoma Publishing Company, and rendered judgment against the Jordan Furniture Company as prayed for.

The case is brought to this court by the Jordan Furniture Company upon petition in error with case-made attached.

All the advertising matter furnished was published by the publishing company, and its account was rendered to the furniture company, claiming a balance to be due on the three contracts of the amount sued for.

The furniture company refused to pay, and, as a. defense to the claim, and as grounds for reversal, contends that the contracts carry stipulations by which damages are attempted to be fixed in anticipation of a breach and are penalties coming within the statutory prohibition, and are void under O. S. 1931, sections 9488 and 9489, as penalties, leaving the publishing company to a collection of the actual damages sustained.

Three rate cards 'were issued by the publishing company, as follows: One effective April 1, 1928; one effective April 1, 1929; and one effective May 1, 1930. These rate cards are, respectively, referred to in each of the three contracts as "the current rate card." When each of the contracts involved was signed, the rates charged for advertising space were shown on the rate card in effect at that time. The rate card then in effect was exhibited to the furniture company when it signed each contract. These rates included the rate per inch of space in the Daily Oklahoman, the rate in the Times, and the rate for the same amount of space used in both papers. A certain rate per inch was charged if a small amount was used over a short period of time, and a smaller rate per inch was charged if a larger amount was used over a longer period of time. A smaller rate per inch was charged if the space used in both papers was the same, or "balanced," than if a larger amount was used in one paper only. The rates provided in each contract are identical with the rates shown on the rate card effective at the time that contract was signed.

The contracts contain the following clause:

"It is also agreed in the event more space than contracted for is used that we are to enjoy the rate earned (under the option chosen), based upon monthly schedule according to the current rate card, the rate earned to be calculated at the expiration of the contract period."

Under the first contract the furniture company agreed to use not less than 1,500 inches of advertising space during twelve months, but actually used about 3,500 inches. It therefore claimed a lower rate under the above clause; and full settlement and discharge of the first contract was made by the furniture company based on the lower rate provided for in the above clause, the furniture company receiving, in December. 1929, a credit of $82.60, and in January, 1930, a credit of $123.90. The furniture company then continued to furnish advertising under the last two contracts. This settlement and discharge of the first contract shows that the intention of both parties was that the rates were to be lower for a greater amount of space used than that chosen under the option, or contracted for; and the furniture company received the benefit of that intention and interpretation of the contract by both parties. The three contracts were just alike in their terms, except only as to the rates per inch of space, and the dates of their execution. This is conceded by both parties.

The contracts also contained this clause:

"In the event we commit a breach of this contract, either by failing to use all the space contracted for as herein agreed under the option chosen, or by failure to pay for said space as used, we agree to pay for the space actually used at the rate in effect for the same amount of space on the date of the execution of this contract."

Under the second contract the furniture company agreed to use not less than 3,500 inches of space during the twelve-months period, but actually used only 2,963 inches; and the furniture company was charged for that number of inches at a higher rate per inch, as provided in the last clause of the contract above quoted, because it used a smaller amount of space than that contracted for under the option chosen.

Under the third contract, the furniture company contracted to use not less than 1,500 inches of space during the twelve-months period. It used only 913 inches in the Oklahoma, and 156 inches in the Times; and it was charged at a higher rate than the rate for 1,500 inches contracted for under the option chosen. This charge was also made under the clause of the contract last above quoted, and based on the space actually used.

. The furniture company complains of the charges made under the last two contracts, and contends that the contracts in suit carry a stipulation by which the damages are attempted to be fixed in anticipation of a breach of an obligation, and claims that such stipulation, though ingeniously worded, is a penalty within the statutory prohibition of section 9488, O. S. 1931, which provides: "Penalties imposed by contract for any nonperformance thereof, are void, * * *" and also of section 9489, O. S. 1931, which provides: "Every contract by which the amount of damages to be paid, or other compensation to be made, for a breach of an obligation, is determined in anticipation

thereof, is to that extent void, except as expressly provided by the next section." The next section referred to provides:

"A stipulation or condition in a contract providing for the payment of an amount which shall be presumed to be the amount of damage sustained by a breach of such contract, shall be held valid, when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage."

If it appears from the language of the contracts that the parties thereto had in contemplation or under consideration the question of the rates to be paid for advertising space, regulated by the amount of space used and the manner in which it was used, and the minds of the parties met in contract and they agreed as to those rates, and their subsequent acts show this to be the meaning intended, then the increased rate for the smaller amount of space used in the manner in which it was used should be considered only as rates agreed upon, as distinguished from penalty for breach of the contract. But, on the contrary, if it appears from the language of the contracts that the parties thereto had in contemplation or under consideration the payment of a higher rate merely as an incentive for the furniture company to use the amount of advertising space chosen or contracted for, or as a punishment for not using the amount of space contracted for, or not using it in the manner stated in the contract, and the subsequent acts of the parties show this to be the meaning intended, the higher rates should be considered, not as rates agreed upon, but as penalties imposed by contract for nonperformance thereof, and void under section 9488, O. S. 1931. See National Life Insurance Co. v. Hale, 54 Okla. 600, 154 P. 536; and National Life Insurance Co. v. Hall, 34 Okla. 395, 125 P. 1108.

Bouvier's Law Dictionary gives the definition of "penalty" as follows:

"A clause in an agreement, by which the obligor agrees to pay a certain sum of money if he shall fail to fulfill the contract contained in another clause of the same agreement"

—and says further:

"A penal obligation differs from an alternative obligation, for this is but one in its essence; while a penalty always includes two distinct engagements, and when the first is fulfilled the second is void. * * *"

The question to be determined by this court is, we think, correctly stated by the furniture company in its brief, wherein it says:

"So we submit that under our interpretation of this contract the excess charges are in the nature of penalties imposed for a breach, and therefore void to that extent. And the plaintiff is not entitled to recover anything in this case. Should the court hold that these contracts do not provide a penalty in these respects, then we have no defense."

So the sole question to be determined is whether or not the contracts provide for penalties in the nature of either penalties or liquidated damages as condemned by the statutes referred to.

It will not be seriously contended that any one who has property to sell, such as advertising space in newspaper publications, cannot fix the prices or charges for which he will sell such space, and reject other prices or charges. See 27 R. C. L. 214, and also Commercial Credit Co. v. Tarwater (Ala.) 110 So. 39, 48 A. L. R. 1437 (Note, pp. 1442-1446). It is common knowledge that public utilities, which sell electricity or gas or water, charge a lower rate for a great amount purchased, or a higher rate for a small amount purchased; and they contract almost universally on that basis. As was said in Missouri-Edison Electric Co. v. M. J. Steinberg Hat & Fur Co., 94 Mo. App. 543, 68 S. W. 383:

"Parties sui juris may make what agreements they like inside the bounds of legal regulations and good morals. * * * Parties often have good and sufficient reasons for exacting certain conditions and refusing to bind themselves by any others, which may not be apparent to persons not conversant with their business affairs. We see nothing unjust in the provision that the lower prices should be accorded the defendant only in the event it patronized the plaintiff for one year; and if we did, we could not lawfully refuse to uphold it."

In the above case the defendant agreed to pay the plaintiff a certain price for electric current to light its store, and agreed to use the plaintiff's services for one year, in consideration of which the plaintiff agreed to allow a certain discount to be deducted from the stipulated price each month. The parties operated under the contract for a part of the year, and the electric current used was paid for according to the contract. Upon default within the year, the electric company brought suit to recover the amount of the discount that had been retained by the defendant in its monthly settlements. The defendant objected as in this case, that the full price

---

was a penalty or liquidated damages, and thereby to avoid liability for the amount of the discount retained. In holding this position untenable, the court said:

"In our opinion this action is not one to enforce either a penalty or liquidated damages, but to collect a balance due on the amount the defendant was to pay plaintiff for lighting its rooms. The contract between the parties provided for two sets of prices; one to be paid if the defendant fully kept its engagement, the other if it did not. When it defaulted, it became bound for the full prices, and, as it had been permitted to withhold the discounts from month to month on the supposition that it would keep the stipulations into which it had entered, the plaintiff's right to recover the amount so retained, as part of the compensattion due for lighting service already furnished was complete."

See Kirby v. United States, for and on Behalf of Crow Tribe of Indians (C. C. A. 9th) 273 F. 391, where the court held that it was but payment for that which the plaintiff parted with and the defendant received. Affirmed. 260 U. S. 423, 43 S. Ct. 144, 67 L. Ed. 329.

The furniture company cites the case of McAlester v. Williams, 77 Okla. 65, 186 P. 461. This case is enlightening upon the interpretation of sections of the Oklahoma statutes pertaining to penalties and liquidated damages, mentioned above, but we do not think it is authoritative for sustaining the contentions here of the furniture company. That case held as follows, syllabus No. 4:

"Record examined, and held that the stipulation or condition of the contract involved herein provides for the payment of a sum which was presumed to be the amount of damages which would be sustained by a breach thereof, and that, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage."

In that case there was a plain agreement in the contract that $1,000 should be paid as liquidated damages in case of a breach by either party; and the court held that it was a valid agreement for the reason that it would be impracticable or extremely difficult to fix the actual damages. The same may be said of the case of Sierzek et al. v. Smith et al., 86 Okla. 79, 206 P. 611, also cited by the furniture company. And Deming Investment Co. v. Baird, 32 Okla. 393, 122 P. 676; J. I. Case Plow Works v. Stewart, 70 Okla. 210, 173 P. 1048; Vitagraph-Lubin-Selig-Essanay v. Billings, 87 Okla. 192, 209 P. 773; Kansas Flour Mills

Co. v. Ballard, 120 Okla. 162, 250 P. 1006; and Consolidated Flour Mills Co. v. Wright et al., 131 Okla. 22, 267 P. 464, also cited by the furniture company, are either based on facts so different from the facts in the case under consideration, or controlled by a different section of the law, that we think no one of them is authority for sustaining the contentions of the furniture company, as we believe will be readily seen by an examination of these cases.

We do not believe that it appears from the language of the contracts that the parties thereto had in contemplation or under consideration the payment of a higher rate merely as an incentive for the furniture company to use the amount of advertising space chosen or contracted for, or as a punishment for not using the amount of space contracted for, or not using it in the manner stated in the contract; and we believe that the subsequent acts of the parties do not show this to be the meaning intended. We believe that their subsequent acts and the language of the contract show that the parties thereto had in contemplation and under consideration the question of the rates to be paid for advertising space, regulated by the amount of space used and the manner in which it was used; and that the minds of the parties met in contract, and they agreed as to those rates; and we think that the increased rate for the smaller amount of space used in the manner in which it was used, should be considered only as rates agreed upon, as distinguished from penalty for a breach of the contracts. We believe, and hold, that these contracts are not contracts by which the amount of damages to be paid, or other compensation to be made, for a breach of an obligation, is determined in anticipation thereof, but merely provide for rates for advertising space agreed upon by the parties fixing the prices or charges therefor, and are valid and enforceable; and further hold that they do not impose penalties for any nonperformance thereof.

Finding no errors in the record, the judgment rendered by the trial court is hereby affirmed.

Plaintiff has asked for judgment on the supersedeas bond given by the furniture company in taking the appeal. It appears that this bond was made in the sum of $3.500, with G. W. Jordan and S. V. Jordan as sureties. The bond is in the usual form, and is incorporated in the case-made. It is conditioned to abide the judgment, pay the con-

**648**

demnation money if the same shall be affirmed, and pay the costs. We are therefore of the opinion that the publish'ng company is entitled to judgment against said G. W. Jordan and S. V. Jordan in the sum of $1,539.15, with interest thereon at 6 per cent. per annum from November 19, 1931, until paid, and for all costs, for which judgment is hereby rendered. See Rumley v. Sanders et al., 62 Okla. 284, 162 P. 949, and Stepp v. Turner, 83 Okla. 139, 200 P. 994.

The Supreme Court acknowledges the aid of Attorneys Chas. P. Alexander, L. A. Foster, and W. H. Thomas in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Alexander and approved by Mr. Foster and Mr. Thomas, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS, BUSBY, WELCH, PHELPS, CORN, and GIBSON, JJ., concur.