FRED L. PREYER and G. ALLEN MEBANE v.
J. D. PARKER and wife, HELEN H. PARKER.

(Filed 15 June 1962.)

1. Usury § 1—

    In order to constitute usury there must be a loan, express or implied, with an understanding between the parties that the money lent should be repaid, and a greater rate of interest than allowed by law must be exacted or promised, with the corrupt intent to take more than the legal rate of interest for use of the money.

2. Same— Contract held ambiguous and not to establish as a matter of law unlawful intent to charge usury.

    The writing in question gave plaintiffs the option to purchase certain land and timber owned by defendants, with provisions specifying in detail the method and time for payments in the event the timber alone were purchased and in the event the land were purchased, with further

provision that if defendants wished to sell the timber during the term of the option, defendants should repay the sum advanced by plaintiffs, evidenced by a note, and an additional sum in a specified amount "for the use of" the sum advanced, and further provision for a division of the profits in the event defendants sold the timber for more than a specified price. The evidence further tended to show a course of conduct between the parties indicating that they themselves regarded the agreement as an option with reservation to the optionor to sell. *Held:* While the agreement to repay the sum advanced plus the specified sum "for the use of" the sum advanced, standing alone, would constitute a usurious agreement, if the purport of the agreement was that defendants should pay the specified sum as compensation to plaintiffs for loss of prospective profits in the event defendants elected to sell during the life of the option, the agreement would not be usurious, and therefore nonsuit of plaintiffs' action to recover the specified sum upon the sale of the timber by defendants was improperly entered.

**3. Trial § 21—**

On motion for nonsuit, plaintiffs are entitled to have the evidence considered in the light most favorable to them.

**4. Contracts § 12—**

The conduct of the parties indicating the manner in which they themselves construe the agreement will be given weight in the interpretation of the instrument by the courts.

APPEAL by plaintiffs from *Olive, J.,* November 20, 1961 Civil Term of GUILFORD, Greensboro Division.

Plaintiffs instituted this action on September 22, 1960, alleging that they are entitled to recover the sum of $14,500.00, with interest, from the defendants as the balance due on a contract made between them on January 3, 1956. Plaintiffs contend this contract constituted a "joint adventure" between the parties for the sale of timber. The defendants admitted the execution of the contract, a copy of which they attached to their answer. However, they alleged it constituted a loan of $35,000.00 by the plaintiffs to the defendants and that, after sixty-five days, they repaid the principal plus $3,000.00 in interest. They alleged that the loan was usurious, denied plaintiffs' right to recover any sum whatever, and set up a counterclaim for $6,000.00, double the amount of the alleged interest.

Plaintiffs' evidence tended to show the following facts:

In the fall of 1955 the defendants owned 23,000 acres of timber land in Hyde County. The land was mortgaged. Defendants were hard pressed for money and desired to sell both the land and the timber. This situation was brought to the attention of the plaintiff Preyer, then twenty-six years old, by an acquaintance who inquired if he "would be interested in entering into the situation." Preyer was interested and he interested his co-plaintiff Mebane in the "situation."

The two made several trips to Hyde County to evaluate the property as an investment. They investigated the salability of the property by talking to people with knowledge of the timber business, and they studied the report of a certified cruiser as to the board feet of timber on the land.

On or about January 3, 1956, for the purpose of selling the timber at a profit to be shared, the plaintiffs and defendants made an oral agreement. This agreement was reduced to writing and signed by the parties on July 24, 1956 as follows:

"January 3, 1956

"F. L. Preyer and G. Allen Mebane

"This is to confirm our oral agreement regarding the 23,000 acre tract of timber land located south of Intercoastal Waterway (south side) in Hyde County, N. C.

"I will sell you or your assigns all standing trees 10 inches DBN or 12 inch stump for the price of $1,450,000.00 with 10 years to cut out the trees (cutting shall be once over). I shall build timber roads. Roads will be built so that no reasonable amount of timber will be over one-half mile from the nearest road, and maintained by you.

"I will sell you in 'fee simple' land and timber and all for $1,650,000.00. There is a mortgage against property and any sales terms are subject to mortgage holders approval.

"*TERMS:* $200,000.00 cash and 1% per month with the removal of 1% of the timber; 2% if over 1% of timber is removed; 3% if over 2% of timber is removed; 3% per annum interest payable quarterly on principal.

"There will be a cutting report submitted to me weekly or biweekly according to settlement date with cutter.

"Fee simple sale $200,000.00 down, 1% per month on principal and 3% interest per annum payable quarterly.

"In event that I wish to sell this timber before such time as you have contracted a sale the following settlements will be made:

"(a) For the use of $35,000.00 received from you I will repay $35,000.00 plus $17,500 *at time of sale of this timber.*

"(b) In event that the sale price of this timber is above $1,-400,000.00 the difference between $1,400,000.00 and the actual sale price will be divided equally and paid proportionately, as received, between you and me.

"(c) In case of 'Fee Simple' the above remains the same except that the amount is $1,600,000.00 instead of $1,400,000.00.

"This agreement will remain in force for one year from the date of this letter, and upon agreement of both parties this agreement might be renewed.

"WITNESS our hands and seals this 3rd day of January, 1956.
                              (s)  J. D. Parker (SEAL)
                              (s)  Helen H. Parker (SEAL)"
(Emphasis added)

At the time the contract was signed, plaintiffs deposited to the credit of Mr. Parker in the Security National Bank at Greensboro the sum of $35,000.00. This was the only money the plaintiffs ever advanced to the defendants. At the suggestion of Mr. Parker, the defendants also executed and delivered to the plaintiffs the following note:

"Greensboro, North Carolina, July 24th, 1956. Ninety days after date for value received we promise to pay to the order of F. L. Preyer and G. Allen Mebane on demand thirty-five thousand dollars negotiable and payable at Greensboro, North Carolina. The subscribers and endorsers hereby agree to continue and remain bound for the payment of this note and all interest thereon notwithstanding any extension of time granted to the principal and notwithstanding any failure or omission to protest this note for non-payment or to give notice of non-payment or dishonor for protest or to make presentment or demand for payment hereby expressly waiving any protest and any and all notice of any extension of time or of non-payment or dishonor or protest in any form or any presentment or demand or any other notice whatsoever. Witness our hands and seals. Signed J. D. Parker (seal); signed Helen H. Parker (seal)."

The plaintiff Mebane testified: "Mr. Parker owed us the contract for which the note was collateral. The note was securing our position with Mr. Parker . . . We had no other way."

After the contract was signed and in order to sell the property, plaintiffs brought in two other people who had knowledge of this business: Mr. Hubbard, a wholesale lumber dealer, and Mr. Clark, a salesman. Thereafter it was their job "to pursue this contract further", and Mr. Clark showed the property to at least one prospective buyer.

In September, 1956, while Clark and Hubbard were attempting to sell it, plaintiffs heard that defendants had conveyed the property. They verified this fact from the public records and on September 28, 1956, plaintiffs and Mr. Hubbard went to see Mr. Parker and asked him if he had sold the property. Parker denied it but was told that plaintiffs had searched the records and found his deed. He then said

that he had not received the entire purchase price for the property but that he did have on hand some funds derived from the sale of tobacco. On that day he gave plaintiffs his check for $38,000.00 and acknowledged that under the contract he owed them a balance of $14,500.00 which he promised to pay as soon as he collected the balance due him from the sale of the timber. At that time Parker was told by the plaintiffs that "being investors they had to bring other people into the situation to share in their part of the profits."

Thereafter plaintiffs saw Mr. Parker several times. Every time he informed them he had some negotiations going on from which he would realize funds in the near future. One time he was going to "close a situation in New York"; in the fall of 1959, he was going to sell his lumber mill and pay plaintiffs out of the proceeds. He said that plaintiffs had helped him at a time he needed help, that he was grateful and would live up to his obligation. The last promise made by the defendant was about one and a half years before the institution of the suit.

Plaintiffs never offered Mr. Parker $1,400,000.00 for the lumber or $1,600,000.00 for the land and timber, although Mebane testified he had secured someone who he thought would do this.

At the conclusion of the plaintiffs' evidence defendants' motion for nonsuit was allowed. Plaintiffs excepted and appealed.

*Smith, Moore, Smith, Schell & Hunter and Richmond G. Bernhardt, Jr., for plaintiff appellants.*
*Bailey and Bailey for defendant appellees.*

SHARP, J. The sole question presented by this appeal is whether the plaintiffs' evidence establishes as a matter of law that the contract upon which they sued was a usurious transaction.

"In order to constitute a usurious transaction, four requisites must appear: (1) There must be a loan, express or implied; (2) an understanding between the parties that the money lent shall be returned; (3) that for such loan a greater rate of interest than is allowed by law shall be paid or agreed to be paid, as the case may be; and (4) there must exist a corrupt intent to take more than the legal rate for the use of the money loaned. . . . unless these four things concur in every transaction it is safe to say that no case of usury can be declared. . . .

"Where the facts are admitted and the unlawful intent plainly manifest from them, the Court may declare a transaction usurious as a matter of law." *Doster v. English*, 152 N.C. 339, 67 S.E. 754.

Applying these well settled principles, as was said in *Doster*, it is plain that the Court could not declare the transaction between plaintiffs and defendants in the instant case usurious as a matter of law.

On the motion for nonsuit plaintiffs are entitled to have the evidence considered in the light most favorable to them. *Rouse v. Jones,* 254 N.C. 575, 119 S.E. 2d 628.

The contract and note which form the basis of plaintiffs' action were obviously not the work of a skilled, legal craftsman. Without doubt, the source of this controversy is paragraph (a) of the settlement provisions of the contract which became pertinent only in the event defendants themselves should sell the property. This paragraph reads as follows: "For the use of $35,000.00 received from you I will repay $35,000.00 plus $17,500.00 at time of sale of this timber." Standing alone this paragraph would have justified the nonsuit on the ground of usury. However, when the contract is read as a whole it is unambiguous, and the intent of the parties at the moment of its execution emerges clearly.

The parties themselves would make this case turn upon whether or not the transaction between the plaintiffs and defendants constituted a loan or a joint adventure. The briefs are evidence that much research has been done on the law of joint adventure. We do not think the agreement between the parties constituted a joint adventure nor do we think the only alternative to a joint adventure is a usurious loan requiring a nonsuit of plaintiffs' cause of action. As we construe the agreement it was a twelve-months option which, for a consideration, reserved to the optionors the right to cancel it and to sell the property themselves at any time before it was exercised by the optionees.

Between January 3, 1956 and July 24, 1956, plaintiffs had attempted to sell the defendants' land under an oral agreement. On July 24, 1956 plaintiffs lent defendants $35,000.00 for ninety days without interest. On that date defendants executed a note and an option under seal whereby they granted to the plaintiffs or their assigns the right at any time during one year from January 3, 1956 to buy the timber on defendants' 23,000 acre tract of land in Hyde County for $1,450,000.00 or to buy the land and timber for $1,650,000.00. The contract specified in detail the method and time for payments, and it limited the time in which the timber might be cut if timber alone were purchased. In the agreement, however, the defendants retained the right to sell the property themselves but, if they did so, they were to repay the plaintiffs the $35,000.00 plus $17,500.00 specified in Paragraph (a) out of the sale proceeds. It is implicit in the agreement and the dealings between the parties that if plaintiffs had exercised the option, the $35,000.00 would have been applied to the purchase price of the property sold. If plaintiffs had not exercised the option and defendants had not sold the land during the twelve-months period involved, the defendants would have been obligated to pay the note with interest at 6% after

the ninety days specified in the note. While plaintiffs were to have a return of the $35,000.00 in all events, the obligation to pay the $17,500.00 arose only in the event defendants themselves sold the property during the time of plaintiffs' option.

The defendants admitted in their answer that during August 1956, before plaintiffs' option had expired, they sold both the land and the timber for $900,000.00. They further alleged in the answer that plaintiffs expected to make a large profit out of this transaction. Under the facts in this case it appears to us that the sum of $17,500.00 specified in Paragraph (a) of the contract was neither interest, penalty, nor liquidated damages; it was the consideration which defendants agreed to pay the plaintiffs for the privilege of canceling the option they had granted plaintiffs under seal. Both had expected to make a large profit at the time defendants signed the contract and plaintiffs advanced the $35,000.00. "A provision for payment of a specified sum as compensation for acts contemplated by the contract, and not for any breach of the contract, is neither a penalty nor liquidated damages." 15 Am. Jur., Damages, Section 241; *Kirby v. U. S.*, 260 U.S. 423; 43 S. Ct. 144, 67 L. ed. 329. However, even if the sum of $17,500.00 could be considered liquidated damages, in view of the amounts involved and the expectation of the parties at the time the contract was made, it is clearly reasonable and not disproportionate to the presumable loss. See Annotation entitled "Stipulations in Land Contract for Payment of Specified Sum by Vendor in Case of Default as Provision for Liquidated Damages," 48 A.L.R. 899.

Our interpretation of the dealings between these parties is corroborated and sustained by the action of the defendants themselves. As soon as the plaintiffs discovered that defendants had canceled their option by selling the property, they demanded compliance with the contract. Mr. Parker complied in part by repaying the $35,000.00 and making a payment of $3,000.00 on the $17,500.00. At the same time he promised to pay the balance of $14,500.00 out of the proceeds of the sale as soon as he collected. This promise to pay was repeated from time to time; the defense of usury came three years later, after the suit was started and after the statute of limitations had run against any action to recover the penalty for usury. G.S. 1-53. "The conduct of the parties in dealing with the contract indicating the manner in which they themselves construe it is important, sometimes said to be controlling in its construction by the court." *Bank v. Supply Co.*, 226 N.C. 416, 432, 38 S.E. 2d 503.

The judgment of involuntary nonsuit is
Reversed.