THE MICHIGAN NATIONAL BANK v. JOHN C. HANNER.

(Filed 14 December, 1966.)

**1. Courts § 9—**

No appeal lies from one Superior Court judge to another, and therefore an order striking certain matter from a pleading with permission to the pleader to file further pleadings, if so advised, does not authorize the pleader to file a subsequent amendment repleading verbatim or in substance the matter ordered stricken.

**2. Pleadings § 30—**

A motion to strike a further answer and counterclaim in its entirety is in substance a demurrer to such counterclaim, and the allowance of the motion to strike is proper when the allegations of the counterclaim, construed in the light most favorable to defendant, fail to state a defense or facts sufficient to entitle defendant to any affirmative relief.

**3. Usury § 1—**

Usury is the charging of interest in excess of the legal rate for the hire or use of money, and must be predicated upon a loan and not a *bona fide* purchase, and the usury statutes do not preclude a seller from charging a higher price for sale on credit than the cash price, even though the difference between the credit price exceeds the cash price by more than six per cent.

**4. Same—**

In an action to recover the amount due on a note given for the balance of the purchase price of a chattel, allegations in purchaser's counterclaim for usury, that the parties entered into a contract to purchase and sell, that the purchaser signed a conditional sales contract and note which was later filled in by the seller in an amount more than six per cent in excess of the cash price, and that the chattel was delivered to the purchaser, discloses a *bona fide* credit sale upon an installment payment basis, and the allegations are insufficient to support the counterclaim.

APPEAL by defendant from *May, S.J.,* June 1966 Assigned Nonjury Civil Session of WAKE.

Action to recover deficiency on note after foreclosure and sale under a conditional sales contract. The note, payable in sixty consecutive monthly instalments and secured by a conditional sales contract, was made payable to vendor, Graubart Aviation, Inc. The note and contract were assigned by Graubart to Appliance Buyers Credit Corp., which in turn assigned them to plaintiff before maturity of the first instalment payment. Defendant made only the February 1963 and March 1963 payments on the note.

This action was brought by plaintiff on 27 December 1963. Defendant demurred to the complaint, which demurrer was denied. Subsequently, defendant petitioned this Court for *certiorari,* which was denied. The defendant then filed answer to plaintiff's complaint, including a "further answer and counterclaim." The "further answer and counterclaim," in substance, alleged the following: That on 14 January 1963 the defendant agreed to purchase a certain airplane and accessories from Graubart Aviation, Inc., for a purchase price of $59,520.00, and partially paid the purchase price by trade-in allowance on another plane in the amount of $5,000.00; that defendant signed in blank a conditional sales agreement and note and left them with Graubart Aviation, Inc., and that Graubart filled in the contract, raising the purchase price to $69,500.00; that in addition, a finance charge in the amount of $19,365.00 to cover the financing of said sales price was assessed; that the plane was purportedly sold at public auction in June 1963 for $40,000.00, which amount was first applied to finance charges and overcharges or raises in the purchase price, and the remaining amount was applied to principal. This left a balance due of $41,117.78, on which interest is claimed

by plaintiff from 14 March 1963; that plaintiff had collected $29,365.00, knowing the same to be usurious. Defendant prayed for recovery of $59,370.00 in his "further answer and counterclaim." There were allegations in other portions of the pleadings that defendant took possession of the plane in January 1963 and relinquished it to the vendor in April 1963.

On motion of plaintiff, portions of defendant's pleadings, including his "further answer and counterclaim" in its entirety, were struck by Judge Bailey on 22 July 1965. Thereupon, defendant filed amended answer. Upon motion of the plaintiff, Judge May on 23 June 1966 struck portions of defendant's amended answer, including all of defendant's "further answer and counterclaim," which alleged usury. Defendant appeals from that portion of the order striking his "further answer and counterclaim."

*Maupin, Taylor & Ellis and Frank W. Bullock, Jr., for plaintiff.*
*Vaughan S. Winborne for defendant.*

BRANCH, J.   The sole question presented by this appeal is: Did the court err in striking from defendant's amended answer the "further answer and counterclaim"?

In allowing the motion to strike from the amended answer the defendant's "further answer and counterclaim" the trial judge found, *inter alia,* "that a similar further answer and counterclaim in almost identical language was heretofore stricken by order of Honorable James H. Pou Bailey at the July 1965 Regular Civil Session, Wake Superior Court."

The power of one judge of the superior court is equal to and co-ordinate with that of another, and a judge holding a succeeding term of court has no power to review a judgment rendered at a former term on the ground that the judgment is erroneous. No appeal lies from one superior court judge to another. Thus an order striking certain matter from a pleading with permission to the pleader to file further pleadings, if so advised, does not authorize the pleader to file a subsequent amendment repleading verbatim or in substance the matter ordered stricken. *Wall v. England,* 243 N.C. 36, 89 S.E. 2d 785. The record in this case reveals that the only change in the defendant's "further answer and counterclaim" was an allegation that the conditional sales contract and note were on a single sheet of paper, forming one instrument, and therefore any taker or holder would be put on notice of the character of the transaction. This was not sufficient to materially change the amended "further answer and counterclaim" from the pleadings ordered stricken by Judge Bailey. However, the reason assigned by the trial judge becomes academic

since both of the pleadings are essentially the same and this particular finding is not decisive on this appeal.

"A motion to strike a pleading in its entirety is in substance, if not in form, a demurrer to the pleadings. . . . 'a demurrer to a complaint for failure to state facts sufficient to constitute a cause of action admits the truth of every material fact properly alleged. . . . However, it is to be noted that on demurrer only facts properly pleaded are to be considered, with legal inferences and conclusions of the pleader to be disregarded.' . . . G.S. 1-151 requires us to construe the allegations of the challenged pleading liberally with a view to substantial justice between the parties." *Johnson v. Johnson,* 259 N.C. 430, 130 S.E. 2d 876.

Construing defendant's "further answer and counterclaim," as we are required to do, we note the defendant alleges in paragraph (BB) "that in January 1963 the defendant agreed to *purchase a certain airplane* with equipment and accessories thereto from Graubart Aviation, Inc., for a purchase price of $59,520.00 and partially paid said purchase price with a trade-in allowance of another plane of $5,000.00," and in paragraph (DD) alleged "that said Graubart Aviation, Inc., completed and filled in the blank spaces in said conditional sales contract, *raising the purchase price* to $69,500.00. . . . and said increase in the sale price* was done for the sole purpose and with intent to evade the usury laws. . . ." and in section (EE) "that in addition to the above *overcharge or raise in sale price* of said airplane, Graubart Aviation, Inc., assessed in the conditional sales contract and note a *finance charge* in the amount of $19,563.00. . . ." (Emphasis ours)

The case of *Bank v. Merrimon,* 260 N.C. 335, 132 S.E. 2d 692, is very similar factually to the instant case. This case is recognized as a landmark case in North Carolina on the question here presented, and Moore, J., speaking for the Court, very exhaustively and clearly enunciated the applicable principles of law, some of which we here quote:

"To maintain an action for the usury penalty the claimant must show: (1) That there was a loan, express or implied. (Or a forbearance of money, *Miller v. Dunn,* 188 N.C. 397, 124 S.E. 746; *Churchill v. Turnage,* 122 N.C. 426, 30 S.E. 122). (2) That there was an understanding between the parties that the money lent would be returned. (3) That for such loan or forbearance a greater rate of interest than is allowed by law was paid. (4) That there was a corrupt intent to take more than the legal rate for the use of the money. *Preyer v. Parker,* 257 N.C. 440, 125 S.E. 2d 916; *Loan Co. v. Yokley,* 174 N.C. 573, 94 S.E. 102; *Doster v. English,* 152 N.C. 339, 67 S.E. 754. If in fact the trans-

action is a bona fide sale and not a loan of money, it is not usurious. *Yarborough v. Hughes,* 139 N.C. 199, 51 S.E. 904. But if the form of the transaction is a subterfuge to conceal an exaction of more than the legal rate of interest on what is in fact a loan and not a sale, the transaction will be regarded according to its true character and will be held usurious. *Ripple v. Mortgage Corp.,* 193 N.C. 422, 137 S.E. 156. . . .

". . . A vendor may fix on his property one price for cash and another for credit, and the mere fact that the credit price exceeds the cash price by a greater percentage than is permitted by the usury laws is a matter of concern to the parties and not to the courts, barring evidence of bad faith. . . . The General Assembly has provided that time prices for supplies advanced for cultivation of crops shall not exceed ten per cent over the retail cash prices. G.S. 44-54. But there is no statute regulating time prices in general retail credit sales payable in instalments. . . . Usury cannot be predicated upon the fact that property is sold on a credit at an advance over what would be charged in case of a cash sale so long as it appears that the price charged *is in fact fixed for the purchase of goods on credit* with no intention or purpose of defeating the usury laws, even though the difference between the cash price and the credit price, if considered as interest, amounts to more than the legal rate. . . . A *bona fide* credit sale upon an instalment payment basis does not involve a loan of money or a forbearance of a ·debt within the meaning and application of the usury laws. . . . 'If there is a real and *bona fide* purchase, not made as the occasion or pretext for a loan, the transaction will not be usurious even though the sale be for an exorbitant price, and a note is taken, at legal rates, for the unpaid purchase money. The reason is that the statute against usury is striking at, and forbidding, the extraction or reception of more than a specified legal rate for the hire of money, and not for anything else; and a purchaser is not, like the needy borrower, a victim of a rapacious lender, since he can refrain from the purchase if he does not choose to pay the price asked by the seller.' *General Motors Acceptance Corp. v. Weinrich,* 262 S.W. 425 (Mo. 1924)." (Emphasis ours) See also *Hendrix v. Cadillac Co.,* 220 N.C. 84, 16 S.E. 2d 456.

Defendant relies heavily on the case of *Ripple v. Mortgage Corp.,* 193 N.C. 422, 137 S.E. 156; however, an examination of the facts in that case does not show a sale. The facts reveal that the motor company purchased automobiles from the manufacturer, who shipped them to the motor company with drafts attached. The motor company paid the drafts with·its checks. Title to the automobiles never

passed to nor vested in the defendant mortgage company, either actually or constructively. The conditional sales contracts describing the motor company as purchaser and the mortgage company as vendor were used for the purpose of concealing the real nature of the transactions. In the instant case there are affirmative allegations of an agreement to purchase, a partial payment, an execution of a conditional sales contract and note, and delivery of the property. This is the usual and complete procedure involved in a *bona fide* credit sale upon an instalment payment basis. The pleadings do not allege a loan. The pleadings do not show the extraction of more than a specified legal rate for the hire of money.

We hold that the plaintiff's pleadings make out a sale and instalment credit transaction, and not a loan. Thus, there can be no cause of action for usury.

The order of the court below striking defendant's "further answer and counterclaim" is

Affirmed.