Robert G. PLOURDE and Debra
A. Plourde, Debtors.

American Express Bank,
FSB, Appellant,

v.

Michael S. Askenaizer, Chapter
7 Trustee, Appellee/ Cross–
Appellant,

v.

eCast Settlement Corporation,
Cross–Appellee.

BAP Nos. NH 08–093, 08–096.
Bankruptcy No. 05–15221–JMD.

United States Bankruptcy Appellate Panel
of the First Circuit.

Oct. 19, 2009.

■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■

William Andrew McNeal, Esq., on brief for Appellant, American Express Bank, FSB, and Cross–Appellee, eCast Settlement Corporation.

Michael S. Askenaizer, Esq., on brief for Appellee/ Cross–Appellant.

Before HAINES, VOTOLATO, and de JESÚS, United States Bankruptcy Appellate Panel Judges.

HAINES, Bankruptcy Appellate Panel Judge.

American Express Bank, FSB, appeals from the bankruptcy court's order disal-

lowing its general unsecured claim for $42,452.61 in credit card debt. Michael Askenaizer, the chapter 7 trustee, appeals the bankruptcy court's order allowing eCast Settlement Corporation's general unsecured claim, another credit card debt, in the amount of $6,309.75. The trustee also appeals the court's denial of his request for an award of attorney's fees pursuant to New Hampshire statute.

Although the combatants initially locked horns over *allowance* of the AmEx and eCast claims, the scope of the contest narrowed in the course of the appeal. At oral argument, the trustee acknowledged that the estate is *indebted* to each creditor, but he pressed his point that neither provided sufficient evidence to support payment as a general unsecured claim. As he had in the lower court, he argued that each creditor's claim comprised principal, interest, and other fees such that, without a detailed itemization of the basis and timing of their charges, the court could not determine the *priority* distribution their claims should be accorded.

In the end, we agree that the claims are not entitled to share as general unsecured claims [1] because both AmEx and eCast failed to prove their entitlement to the distributional status they sought. Accordingly, we **REVERSE** disallowance of AmEx's claim and **AFFIRM** allowance of eCast's claim, but do so with an accompanying determination that their allowed claims are entitled to no better treatment than the priority provided under § 726(a)(4). We also **AFFIRM** the disallowance of the trustee's request for a fee award.

## JURISDICTION

Before addressing the merits, we must determine our jurisdiction. *See Boylan v. George E. Bumpus, Jr. Constr. Co. (In re George E. Bumpus, Jr. Constr. Co.)*, 226 B.R. 724 (1st Cir. BAP 1998). We have jurisdiction to hear appeals from: (1) final judgments, orders, and decrees; or (2) with leave of court, from certain interlocutory orders. 28 U.S.C. § 158(a); *Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.)*, 218 B.R. 643, 645 (1st Cir. BAP 1998). A decision is final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment," *id.* at 646 (citations omitted), whereas an interlocutory order "only decides some intervening matter pertaining to the cause, and requires further steps to be taken in order to enable the court to adjudicate the cause on the merits." *Id.* (quoting *In re American Colonial Broad. Corp.*, 758 F.2d 794, 801 (1st Cir.1985)). The bankruptcy court's order allowing or disallowing a claim is final and, thus, appealable. *See Orsini Santos v. Lugo Mender (In re Orsini Santos)*, 349 B.R. 762, 768 (1st Cir. BAP 2006) (citing *Perry v. First Citizens Fed. Credit Union (In re Perry)*, 391 F.3d 282, 285 (1st Cir. 2004)). Similarly, the order denying the trustee's request for a fee award is final

---

**1.** The term "general unsecured claim" is nearly universally considered by bankruptcy courts and practitioners to mean an unsecured claim that will receive distribution from the estate via § 726(a)(2). We use the term intending that meaning throughout this opinion. As we employ it, the term does not include unsecured claims that receive more favored treatment under § 726(a)(1) (i.e., administrative claims) and those that receive less favored treatment under § 726(a)(3)

(tardily filed claims), § 726(a)(4) (fines and penalties), and § 726(a)(5) (post-petition interest on allowed claims).

Unless otherwise noted, all references to statutory sections or to the "Bankruptcy Code" are to the Bankruptcy Reform Act of 1978, as amended prior to April 20, 2005, 11 U.S.C. §§ 101, *et seq.* All references to "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure.

and appropriate for our review. *See General Elec. Capital Corp. v. Future Media Prods.*, 536 F.3d 969 (9th Cir.2008); *see also Xifaras v. Morad (In re Morad)*, 328 B.R. 264 (1st Cir. BAP 2005).

### STANDARD OF REVIEW

We review the bankruptcy court's findings of fact for clear error and conclusions of law *de novo. See T.I. Fed. Credit Union v. DelBonis*, 72 F.3d 921, 928 (1st Cir.1995); *Western Auto Supply Co. v. Savage Arms, Inc. (In re Savage Indus., Inc.)*, 43 F.3d 714, 719–20 n. 8 (1st Cir. 1994). To resolve the issues on appeal, we must interpret and apply §§ 726 and 502, and Bankruptcy Rule 3001. Such interpretations are legal questions subject to *de novo* review. *See Caplan v. B–Line, LLC (In re Kirkland)*, 572 F.3d 838, 840 (10th Cir.2009).[2] Disposition of the trustee's request for a fee award was the result of a legal conclusion, as well. Thus, we review all the issues presented *de novo.*

### BACKGROUND

**1. The Case and Claims**

Robert and Debra Plourde filed a voluntary chapter 7 petition in October 2005. Their schedules listed multiple credit card debts.

AmEx filed a proof of claim for an unsecured, nonpriority claim in the amount of $42,452.61, designated Claim # 4 on the bankruptcy court's claims register. AmEx utilized Official Form 10,[3] and indicated, by failing to check a particular box in Part 4, that no "interest or other charges in addition to the principal" constituted a part of its claim. Attached to the form was one page from a credit card account statement dated October 14, 2005, issued to "Debra A. Plourde and Elect. Contr/Assoc." The statement showed a $42,452.61 balance and indicated that the account was "cancelled and suspended." Although the Plourdes listed two unsecured, nonpriority debts to AmEx in Schedule F, neither corresponded with the debt set out in Claim # 4.

Also employing Official Form 10,[4] eCast filed its proof for an unsecured, nonpriority claim in the amount of $6,813.06, designated Claim # 18 on the bankruptcy court's claims register. In the same manner as AmEx, eCast indicated its claim consisted of principal only (i.e., no "interest or other charges"). Attached to the claim form was a single-page computer-generated document entitled "Account Summary." It identified Robert Plourde as the debtor, and set out the bankruptcy case number, the filing date, the last four digits of an account number, and a listing of statement balances for June 9, 2005 through November 9, 2005. The Plourdes scheduled no debts to eCast, but did schedule an unsecured obligation in the amount of $6,309.75 to "The GM Card," bearing the same account number eCast had listed for Claim # 18.

**2. The Claims Objections**

The trustee insisted that AmEx and eCast be put to their proof. AmEx's Claim # 4 was deficient in his view be-

---

2. The lesser included question whether AmEx's and eCast's proofs of claim established "prima facie evidence" of their validity is a question of law. And, although the bankruptcy court took evidence, its determination regarding the sufficiency of each creditor's evidence constitutes a legal conclusion, as well.

3. In filing their proofs of claim, AmEx and eCast used a version of Official Form 10, as revised in September 1997. Form 10 was subsequently further revised, most recently in December 2008.

4. *See* note 3, *supra.*

cause: (1) the obligation had not been listed on the Plourdes' schedules and the proof of claim's accompanying documentation was insufficient to establish their liability; and (2) because the claim appeared to be a credit card obligation, it likely included interest and other charges not reflected on the claim form or itemized separately. Thus, he asserted that Claim # 4 did not conform with the requirements of Bankruptcy Rule 3001(a) and (c), and, therefore, was not entitled to a presumption of validity under Bankruptcy Rule 3001(f).

With respect to Claim # 18, the trustee stated that: (1) although the Plourdes' schedules listed a debt to The GM Card with an account number that matched the account number listed by eCast, the claim amount in the schedules was less than the amount set forth in Claim # 18; and (2) although Claim # 18 seemed to include interest and other charges, eCast's proof of claim form did not acknowledge them or itemize them. As a result, he argued that Claim # 18 did not conform with the requirements of Bankruptcy Rule 3001(a) and (c), and was not entitled to the presumption of validity under Bankruptcy Rule 3001(f).

Shortly thereafter, the creditors' counsel provided documentation intended to address the trustee's objections.[5] With respect to Claim # 4, he provided: (1) credit card account statements issued to "Debra A. Plourde and Elect. Contr/Assoc." for October 2004 through June 2005; and (2) a document that purported to be the credit card agreement between AmEx and Mrs. Plourde. With respect to eCast's Claim # 18, he provided credit card account statements for December 2004 through July 2005.[6] eCast also filed another proof of claim, designated Claim # 28, which amended Claim # 18, reducing the sum from $6,813.06 to $6,778.06. The reduced amount remained greater than the GM Card debt scheduled by the Plourdes. Attached to Claim # 28 were six monthly credit card account statements (February 2005 through July 2005).

After an initial hearing, AmEx and eCast filed a formal response to the trustee's objections, arguing, *inter alia*, that itemized statements (relating to interest and other charges, as required by Official Form 10) were not necessary because:

> For an unsecured revolving debt instrument such as a credit card account, the filing of bankruptcy effectively cancels the account. The accumulation of interest and other charges on the account also cease as of the petition date for any account that is open and active on the petition. A claim filed for a credit card account, therefore, represents a "snapshot" of the account as of the filing of the Debtor's petition. The claim amount is the outstanding balance on the Debtor's account on the petition date. There is no unmatured interest. By any practical characterization, the balance owed on the petition date is all principal. It is not subject to separate interest, fee, and principal components such as would be the case with a secured claim.

Response of American Express Bank and eCast Settlement Corporation to Trustee's Objections to Claim Numbers 4 and 18.

In turn, the trustee argued that the AmEx and eCast proofs of claim were "misleading and incomplete"; that, despite his requests, each had failed to itemize the

---

5. AmEx and eCast were represented by the same attorney below, as they are on appeal.

6. The documents themselves are not contained in either the appendix or the appellate record as designated by the parties.

interest and other charges contained within their claims. He asserted that, although AmEx and eCast had produced a few monthly statements, those did not enable him to determine the accuracy of the claims and, as a result, the claims should be disallowed under § 502(b). He also urged that the creditors must provide itemized statements so that he could identify whether any components of their claims should, pursuant to § 726(a)(4), receive distributions only after payment of general unsecured claims.[7]

Finally, the trustee sought an award of attorney's fees pursuant to New Hampshire state law, N.H.Rev.Stat. Ann. § 361–C:2, if the bankruptcy court concluded that he was the prevailing party on his objections to the AmEx and eCast claims.

The bankruptcy court ultimately convened a final hearing, accepted briefs and took the matter under submission.

### 3. The Decision Below.

The bankruptcy court sustained the trustee's objection as to AmEx's claim, disallowing it entirely. It allowed eCast's claim for $6,309.75, the amount the Plourdes had scheduled as The GM Card debt, but less than eCast had sought.

In its lengthy decision, the bankruptcy court concluded that Claim # 4 did not establish the prima facie validity of AmEx's claim because it did not include the *applicable* credit card agreement or any evidence itemizing the charges included in the claim. Although AmEx provided a copy of the original credit card agreement, the court noted that the agreement's terms were not fixed. There was no way to ascertain whether, during the life of the agreement, AmEx may have exercised its unilateral right to impose additional or different terms.[8] Consequently, the bankruptcy court concluded that "in the absence of any evidence of the contractual charges that constitute AmEx's [Claim # 4], this Court can make no finding that any of those charges are either allowable under § 502 or entitled to second priority distribution under § 726(a)(2)."

The court allowed eCast's claim as a general unsecured claim in the amount the Plourdes scheduled for The GM Card, $6,309.75. It observed that the Plourdes had acknowledged the debt by scheduling

---

7. Section 726(a)(4) subordinates allowed claims "for any fine, penalty, or forfeiture, or for multiple, exemplary, or punitive damages" to the extent they "are not compensation for actual pecuniary loss."

8. The bankruptcy court stated:

After all, regardless of the provisions of the credit card agreement, the card issuer may have exercised its right under the agreement to impose additional or different terms. Under the terms of the typical credit card agreement, including the AmEx agreement in this case, the terms that exist between the issuer and the consumer at any particular time may only be determined if a listing or historical summary of charges and interest is provided. The agreement itself is at best only evidence of the existence of a contractual relationship, but is little or no evidence of the terms of the contract from time to time. The need to provide details on the terms and conditions of the contract, and the actual charges and interest imposed, from time to time may be onerous from the credit card issuers's [sic] point of view. However, such difficulties flow from the business model that the credit card industry has voluntarily adopted. So long as credit card issuers wish to maintain sole discretion to vary the terms of their agreement with a consumer at any time, and from time to time, they must accept the legal consequences of that business model. One of those consequences is that they may need to provide details of the charges and interest imposed by them in response to a proper objection to a proof of claim in a bankruptcy proceeding.

See *In re Plourde*, 397 B.R. 207, 226 (Bankr. D.N.H.2008).

it (as undisputed) and, therefore, their schedules, combined with the information submitted by eCast, provided "limited but sufficient evidence to establish the nature and amount of its claim absent a substantive objection by the Trustee." The court concluded, however, that eCast had failed to submit any evidence to support its claim in an amount beyond that scheduled by the Plourdes.

Finally, the bankruptcy court denied the trustee's request for an award of attorney's fees, which he had sought under N.H.Rev.Stat. Ann. § 361–C:2, a statute imposing reciprocal responsibility when a credit card agreement purports to impose responsibility for fees on a debtor when the creditor successfully enforces it.[9] Although the trustee had been partially successful in his objection to eCast's claim, nothing in the record satisfied the statute's principal condition-that the underlying agreement provided for the creditor to recover attorney's fees in an action against the debtors. As to AmEx, the court determined that, although the credit card agreement did provide for AmEx to recover attorney's fees, it was expressly governed by Utah law, not New Hampshire law, and

the trustee failed to prove the content of Utah law or, alternatively that New Hampshire law should override the agreement's terms. *See Plourde,* 397 B.R. at 227.

On appeal, AmEx challenges its claim's disallowance, while the trustee challenges allowance of eCast's claim and the denial of his request for attorney's fees.

## DISCUSSION

### I. Filing and Allowance of Claims

#### A. Sections 501 and 502 and Bankruptcy Rule 3001–Claims Allowance

Sections 501 and 502 govern the filing and allowance of creditor claims in bankruptcy proceedings. *See Travelers Cas. & Sur. Co. of America v. Pacific Gas & Elec. Co.,* 549 U.S. 443, 127 S.Ct. 1199, 167 L.Ed.2d 178 (2007). When a debtor files for relief, each creditor is entitled to file a proof of claim against the debtor's estate pursuant to § 501. Once a creditor has filed such a proof, the bankruptcy court must determine whether the claim is "allowed."[10] Section 502(a) provides that a proof of claim filed under § 501 is deemed allowed unless a party in interest (often

---

9. The statute, which governs the collection of attorney's fees in consumer cases, provides:
   If a retail installment contract or evidence of indebtedness provides for attorney's fees to be awarded to the retail seller, lender or creditor in any action, suit or proceeding against the retail buyer, borrower or debtor involving the sale, loan or extension of credit, such contract or evidence of indebtedness shall also provide:
   I. Reasonable attorney's fees shall be awarded to the buyer, borrower or debtor if he prevails in
     (a) Any action, suit or proceeding brought by the retail seller, lendor or creditor; or
     (b) An action brought by the buyer, borrower or debtor; and
   II. If a buyer, borrower or debtor successfully asserts a partial defense or set-off,

recoupment or counterclaim to an action brought by the retail seller, lender or creditor, the court may withhold from the retail seller, lender or creditor the entire amount or such portion of the attorney fees as the court considers equitable.
N.H.Rev.Stat. Ann. § 361–C:2.

10. "Allowance" constitutes determination of the amount of a "claim" (*see* § 101(5)) "in lawful currency of the United States as of the date of the filing of the petition" except to the extent that it is unenforceable as a matter of law (generally speaking, contract law) or unless its enforceability against the estate is limited for reasons related to bankruptcy policies such as equalizing treatment among creditors or avoiding overreaching by insiders of the debtor. *See* 11 U.S.C. § 502(b).

the trustee) objects. However, even where a party in interest objects, the court "shall allow" the claim unless one of nine exceptions enumerated in § 502(b) applies.[11]

The Bankruptcy Code itself does not prescribe what documentation, if any, must accompany a proof of claim. However, the Federal Rules of Bankruptcy Procedure, which provide the procedural framework for the filing and allowance of claims, regulate the form, content, and attachments for proofs of claim. Bankruptcy Rule 3001(a) requires that a proof of claim be a written statement that conforms substantially with "the appropriate Official Form," which is Official Form 10. Bankruptcy Rule 3001(c) directs creditors filing a proof of claim "based on a writing" to attach either the original or a duplicate of the writing.

Official Form 10 instructs the claimant to "attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running

---

11.  Section 502(b) provides:

Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—

(1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured;

(2) such claim is for unmatured interest;

(3) if such claim is for a tax assessed against property of the estate, such claim exceeds the value of the interest of the estate in such property;

(4) if such claim is for services of an insider or attorney of the debtor, such claim exceeds the reasonable value of such services;

(5) such claim is for a debt that is unmatured on the date of the filing of the petition and that is excepted from discharge under section 523(a)(5) of this title;

(6) if such claim is the claim of a lessor for damages resulting from the termination of a lease of real property, such claim exceeds—

(A) the rent reserved by such lease, without acceleration, for the greater of one year, or 15 percent, not to exceed three years, of the remaining term of such lease, following the earlier of—

(i) the date of the filing of the petition; and

(ii) the date on which such lessor repossessed or the lessee surrendered, the leased property; plus

(B) any unpaid rent due under such lease, without acceleration, on the earlier of such dates;

(7) if such claim is the claim of an employee for damages resulting from the termination of an employment contract, such claim exceeds—

(A) the compensation provided by such contract, without acceleration, for one year following the earlier of—

(i) the date of the filing of the petition; or

(ii) the date on which the employer directed the employee to terminate, or such employee terminated, performance under such contract; plus

(B) any unpaid compensation due under such contract, without acceleration, on the earlier of such dates;

(8) such claim results from a reduction, due to late payment, in the amount of an otherwise applicable credit available to the debtor in connection with an employment tax on wages, salaries, or commissions earned from the debtor; or

(9) proof of such claim is not timely filed, except to the extent tardily filed as permitted under paragraph (1), (2), or (3) of section 726(a) of this title or under the Federal Rules of Bankruptcy Procedure, except that a claim of a governmental unit shall be timely filed if it is filed before 180 days after the date of the order for relief or such later time as the Federal Rules of Bankruptcy Procedure may provide, and except that in a case under chapter 13, a claim of a governmental unit for a tax with respect to a return filed under section 1308 shall be timely if the claim is filed on or before the date that is 60 days after the date on which such return was filed as required.

accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of liens." Official Form 10. The creditor is required to explain any failure to attach documents based on a lack of availability. In addition, if the required documents are too voluminous, the creditor may attach a summary. Official Form 10 further requires the claimant to specify whether the claim includes "any interest or other charges in addition to the principal amount of the claim," and if so, to attach an "itemized statement of all interest or additional charges."

Bankruptcy Rule 3001(f) sets the evidentiary effect of a properly filed proof of claim (i.e., one that complies with the requirements of the rule and form), stating that a claim "filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim."

Fed. R. Bankr.P. 3001(f); *see also In re Long*, 353 B.R. 1, 13 (Bankr.D.Mass.2006) (citing *Juniper Dev. Group v. Kahn (In re Hemingway Transp., Inc.)*, 993 F.2d 915, 925 (1st Cir.1993)).

■■■ In order to rebut the prima facie evidence a proper proof of claim provides, the objecting party must produce "substantial evidence" in opposition to it. *See In re Long*, 353 B.R. at 13; *see also United States v. Clifford (In re Clifford)*, 255 B.R. 258, 262 (D.Mass.2000). If the objection is substantial, the claimant "is required to come forward with evidence to support its claims … and bears the burden of proving its claims by a preponderance of the evidence." *Tracey v. United States (In re Tracey)*, 394 B.R. 635, 639 (1st Cir. BAP 2008) (citing *In re Organogenesis, Inc.*, 316 B.R. 574, 583 (Bankr. D.Mass.2004)).[12]

**12.** Section 502 lists nine bases for disallowing claims. Failure to file a proof of claim meeting the requirements of Bankruptcy Rule 3001 and Official Form 10 is not among them. *See* 11 U.S.C. § 502(b), *supra* n. 11. Neither Bankruptcy Rule 3001 nor § 502 provides that a proof of claim which does not conform with the requirements of the rule and/or the form be disallowed due to such noncompliance, nor do they otherwise address the consequence of filing a proof of claim that fails to meet all of the rule's requirements. Rather, when the proof of claim is not filed in accordance with the Federal Rules of Bankruptcy Procedure, it does not constitute prima facie evidence of the validity and amount of the claim, and the burden of proof rests on the claimant. *In re Long*, 353 B.R. at 13. Bankruptcy Rule 3001 and Official Form 10's documentary requirements and the shifting burden serve two purposes. *See In re Burkett*, 329 B.R. 820, 827 (Bankr. S.D.Ohio 2005). First, the supporting documentation required by the rule and form are intended to enable the debtor or trustee to evaluate the claim's amount and validity and to challenge portions of the claim that may be inaccurate. *Id.* Second, the rules governing claims are intended to simplify the claims allowance process and provide a fair and

inexpensive process for all parties including creditors. *Id.*

Courts differ as to whether § 502(b) sets forth the *exclusive* bases upon which a claim may be disallowed, or whether a court may disallow a claim for reasons other than those listed in that subparagraph. *Compare Heath v. American Express Travel Related Servs. Co., Inc. (In re Heath)*, 331 B.R. 424 (9th Cir. BAP 2005); *Dove–Nation v. eCast Settlement Corp. (In re Dove–Nation)*, 318 B.R. 147 (8th Cir. BAP 2004); *In re Moreno*, 341 B.R. 813 (Bankr.S.D.Fla.2006); *In re Burkett*, 329 B.R. at 828–29; *In re Shaffner*, 320 B.R. 870 (Bankr.W.D.Mich.2005); *In re Mazzoni*, 318 B.R. 576 (Bankr.D.Kan.2004); *In re Shank*, 315 B.R. 799 (Bankr.N.D.Ga.2004); *In re Kemmer*, 315 B.R. 706 (Bankr.E.D.Tenn. 2004); *In re Cluff*, 313 B.R. 323 (Bankr. D.Utah 2004), *aff'd*, 2006 WL 2820005 (D.Utah Sept.29, 2006); with *In re Stoecker*, 5 F.3d 1022 (7th Cir.1993) (adopting nonexclusive view); *eCast Settlement Corp. v. Tran (In re Tran)*, 369 B.R. 312 (S.D.Tex.2007); *In re Taylor*, 363 B.R. 303 (Bankr.M.D.Fla.2007); *In re Armstrong*, 320 B.R. 97 (Bankr.N.D.Tex. 2005); *In re Henry*, 311 B.R. 813 (Bankr. W.D.Wash.2004); *In re Jorczak*, 314 B.R. 474 (Bankr.D.Conn.2004). We note these diver-

Were we to determine this appeal based on issues pertaining solely to the *allowance* of the AmEx and eCast claims, the questions would be close. On the one hand, AmEx produced its original agreement with Mrs. Plourde, although the terms of the agreement as they existed through the life of the credit relationship remained in doubt. The AmEx agreement vested in AmEx the right to amend its terms at will. Thus, as the bankruptcy judge concluded, one could not be sure exactly for what AmEx charged the account without a far more careful and comprehensive itemization than AmEx chose to provide. For the bankruptcy judge, those failings were enough to order the claim's disallowance. But we wonder whether, putting questions about priority to the side, one could conclude as a matter of law that AmEx had not proved estate liability on its claim. After all, it did produce the credit agreement and a series of statements showing the balances owed.

■ eCast, on the other hand, produced no agreement, but relied upon the Plourdes' scheduling of the identically-numbered GM Card debt, with a balance approximating the amount of eCast's proof of claim. For the bankruptcy judge, that was sufficient proof to allow eCast's claim, granting the schedule evidentiary weight notwithstanding its hearsay character as to the trustee.[13] He credited the Plourdes' schedule and considered it evidence supporting liability as a hearsay statement imbued with sufficient indicia of reliability to be admissible under the federal evidence rules' residuary exception to the hearsay rule.[14] The correctness of that conclusion, however, rests on the exception's applicability, which is questionable. One of the rule's requirements is that the hearsay statement "is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts...." Can it really be said that a statement in the debtors' schedules is "more probative" on the question of liability on the account than the creditor's own records? That the creditor cannot be expected to procure and proffer its own records to support its claim?[15]

But we need not resolve those issues. The trustee concedes that the Plourdes' bankruptcy estate is liable on both claims.

---

gent views here, although, because *allowance* of the claims is no longer the issue in this appeal, we need not choose sides.

**13.** Generally, a bankruptcy court may properly consider a debtor's petition, schedules and statement of affairs as evidentiary admissions made by the debtor. *See* Fed.R.Evid. 801(d)(2) (providing that a statement is not hearsay if "the statement is offered against a party and is ... the party's own statement ..."). Therefore, a debtor's schedules may be admissible as nonhearsay evidence to establish the validity and ownership of a claim against a debtor when the debtor is the party objecting to the claim. *See Torgenrud v. Wolcott (In re Wolcott),* 194 B.R. 477, 483 (Bankr. D.Mont.1996); *see also In re Bohrer,* 266 B.R. 200, 201 (Bankr.N.D.Cal.2001) ("Statements in bankruptcy schedules are executed under penalty of perjury and when offered against a debtor are eligible for treatment as judicial admissions."). However, when the objecting party is the trustee, the bankruptcy schedules are not admissible as an admission against the trustee. *See Kirkland,* 572 F.3d at 840–41 (stating that debtor's schedules "were of no evidentiary value against the Trustee"); *Burkett,* 329 B.R. at 829 ("Of course, a debtor's scheduling of a debt does not constitute an admission by the trustee...."); *Jorczak,* 314 B.R. at 482–83 (scheduling of a debt constitutes an admission which is binding upon the debtors but not the trustee).

**14.** *See* Fed.R.Evid. 807.

**15.** At least one court of appeals has held that the statements in the debtors' schedules are of "no evidentiary value" against a bankruptcy trustee contesting allowance of a creditor's claim. *See Kirkland,* 572 F.3d at 840–41.

Thus, both may now be considered "allowed." The trustee has, however, continued his insistence that, in light of their failures of proof, neither AmEx nor eCast had established its entitlement to be paid as a general unsecured claim.

### B. Distributional Priorities— § 726

Under § 502(b), "allowance" of a claim constitutes a determination of "the *amount* of such claim".[16] As has been the case here, parties often conflate a claim's allowance with establishing its distributional entitlement. This is understandable. In most cases, the question simply is whether—and how much—a claimant is owed by a debtor (and thus the estate). When a claim is asserted to be a general unsecured claim, issues about its entitlement to that priority in the bankruptcy distributional scheme do not often arise.

■ But a claim's allowance merely establishes it as a charge against the estate. Its distributional priority is separately addressed by § 726(a).[17] In each instance (including the cross-reference to § 507 administrative claims in § 726(a)(1)), the priorities set by § 726(a) dictate the order in which *allowed* unsecured claims are to be paid. A claim's allowance stands for little in terms of actually getting paid if, in the course, the claimant has not also established its claim's § 726(a) priority.[18]

---

16. *See* 11 U.S.C. § 502(b), *supra* n. 11.

17. Section 726(a) provides:
Except as provided in section 510 of this title, property of the estate shall be distributed—
(1) first, in payment of claims of the kind specified in, and in the order specified in, section 507 of this title, proof of which is timely filed under section 501 of this title or tardily filed on or before the earlier of—
(A) the date that is 10 days after the mailing to creditors of the summary of the trustee's final report; or
(B) the date on which the trustee commences final distribution under this section;
(2) second, in payment of any *allowed* unsecured claim, other than a claim of a kind specified in paragraph (1), (2), (3), or (4) of this subsection, proof of which is—
(A) timely filed under section 501(a) of this title;
(B) timely filed under section 501(b) or 501(c) of this title; or
(C) tardily filed under section 501(a) of this title, if—
(i) the creditor that holds such claim did not have notice or actual knowledge of the case in time for timely filing of a proof of such claim under section 501(a) of this title; and
(ii) proof of such claim is filed in time to permit payment of such claim;
(3) third, in payment of any *allowed* unsecured claim proof of which is tardily filed under section 501(a) of this title other than a claim of the kind specified in paragraph (2)(C) of this subsection;
(4) fourth, in payment of any *allowed* claim, whether secured or unsecured, for any fine, penalty, or forfeiture, or for multiple, exemplary, or punitive damages arising before the earlier of the order for relief or the appointment of a trustee, to the extent that such fine, penalty, forfeiture, or damages are not compensation for actual pecuniary loss suffered by the holder of such claim;
(5) fifth, in payment of an interest at the legal rate from the date of the filing of the petition, on any claim paid under paragraph (1), (2), (3), or (4) of this subsection; and
(6) sixth, to the debtor.
11 U.S.C. § 726(a).

18. Payment priority is critical in chapter 7 cases. We know that few of these liquidation proceedings produce *any* distributions to creditors. And, for those that do, it is seldom the case that all general unsecured claimants are fully paid. Thus, practically speaking, relegation to subordinated status means receiving no distribution from the estate in most cases. *See United States v. Waindel (In re Waindel)*, 65 F.3d 1307, 1309–1310 (5th Cir. 1995) ("Section 726 sets forth the order for payment of claims. The general scheme requires payment of priority claims followed by

For example, an unsecured creditor seeking administrative claim treatment within § 726(a)(1) (ahead of the general pool of unsecured creditors) has the burden of proving the elements that qualify it for that status. *See, e.g., McMillan v. LTV Steel, Inc.*, 555 F.3d 218, 226 (6th Cir.2009); *Supplee v. Bethlehem Steel Corp. (In re Bethlehem Steel Corp.)*, 479 F.3d 167, 172 (2d Cir.2007); *Isaac v. Temex Energy, Inc. (In re Amarex, Inc.)*, 853 F.2d 1526, 1530 (10th Cir.1988); *In re Franklin*, 284 B.R. 739, 742 (Bankr. D.N.M.2002); *In re Philadelphia Mortg. Trust*, 117 B.R. 820, 827 (Bankr.E.D.Pa. 1990); *see also Woburn Assocs. v. Kahn (In re Hemingway Transport, Inc.)*, 954 F.2d 1 (1st Cir.1992); *In re Beyond Words Corp.*, 193 B.R. 540, 543 (N.D.Cal.1996).

■■■■■ A party in interest may object to a claimant's right to be paid as a general unsecured claim. In such instances, when a substantial objection to the claimed priority is interposed, the claimant shoulders the burden of proving its entitlement to payment under § 726(a)(2). Once a claim is deemed allowed, its priority must be determined.

> In most Chapter 7 cases, like this one, a claim holder's "rung" on the priority "ladder" created under section 726 is crucial because the estate assets are limited. There are usually insufficient assets to pay all claimants in full, and section 726(b) mandates pro rata distribution among all claimants at each level, or rung of the priority ladder, with an

absolute priority cutoff. All allowed claimants at a particular level or rung of the ladder must be paid in full before any estate funds can be distributed to holders of claims at the next lower rung. Thus, the race among claimants is to reach the highest rung on the claims ladder.

*In re Stoecker*, 151 B.R. 989, 995 (Bankr. N.D.Ill.1992), *rev'd on other grounds*, 179 B.R. 532 (N.D.Ill.1994).

■■■ There is no presumed, or "default," "rung" on the priority ladder; creditors are not automatically assigned to the "general unsecured" pool. Rather, each creditor must demonstrate its entitlement to distribution at a particular level. *See Amarex*, 853 F.2d at 1530 ("[T]he burden of proving entitlement to a priority is on the person claiming priority."). Otherwise, a claimant may be provided priority at a higher level than that to which it is entitled, watering down the dividend provided to creditors the legislation prefers. This would be contrary to the predominant goal of the Bankruptcy Code "to secure equal distribution among [similarly situated] creditors." *See Howard Delivery Serv. v. Zurich Am. Ins. Co.*, 547 U.S. 651, 655, 126 S.Ct. 2105, 165 L.Ed.2d 110 (2006); *Bethlehem Steel Corp.*, 479 F.3d at 172 ("Because the presumption in bankruptcy cases is that the debtor's limited resources will be equally distributed among his creditors, statutory priorities are narrowly construed.").

unsecured claims and, if any money remains, payment of late claims, various types of penalties and interest. There will hardly ever be surplus funds available to the estate after payments to the first two tiers of creditors in a Chapter 7 case ...."); *see also* U.S. Trustee Program, Preliminary Report on Chapter 7 Asset Cases 1994 to 2000 (June 2001), *available at* http://www.usdoj.gov/ust/eo/ public—affairs/statistics/stats—reports.htm ("Historically, the vast majority (about 95 to 97 per-

cent) of chapter 7 cases yield no assets." Of the remaining chapter 7 cases closed between 1994 and 2000, 54.6 percent had receipts of less than $5,000); Jimenez, Dalie, The Distribution of Assets in Consumer Chapter 7 Bankruptcy Cases (September 10, 2009), *available at* SRRN: http://ssrn.com/abstract=1471603 (finding that of 2,500 consumer chapter 7 cases examined in the year 2007, only seven percent had assets available for distribution to unsecured creditors).

▮▮▮▮ Thus, questions of a claim's *statutory* priority are properly raised as part of a claim objection. These questions must be distinguished from attempts at equitable subordination under § 510.[19] We acknowledge § 510 here only to be clear that we are not proceeding under that section (where different procedures and burdens apply), but rather under the explicit statutory priority-setting provisions of § 726.

Having limned the contours of claims allowance and priority with respect to substance and process, we now turn to the remaining disputes.

## C. The AmEx and eCast Claims
## 1. Sufficiency of the Proofs of Claim

▮▮▮▮ That neither AmEx's nor eCast's proof of claim was entitled to be treated as *prima facie* evidence of a valid claim could not be plainer. To begin, neither noted on the form that its claim included "interest or other charges." That representation was untrue and the trustee properly took exception to it.[20]

---

**19.** Section 510(c)(1) of the Bankruptcy Code explicitly allows bankruptcy courts to reorder existing priorities among creditors "under principles of equitable subordination."

Bankruptcy courts do indeed have some equitable powers to adjust rights between creditors. *See, e.g.,* § 510(c) (equitable subordination). That is, within the limits of the Code, courts may reorder distributions from the bankruptcy estate, in whole or in part, for the sake of treating legitimate claimants to the estate equitably. But the scope of a bankruptcy court's equitable power must be understood in the light of the principle of bankruptcy law discussed already, that the validity of a claim is generally a function of underlying substantive law. Bankruptcy courts are not authorized in the name of equity to make wholesale substitution of underlying law controlling the validity of creditors' entitlements, but are limited to what the Bankruptcy Code itself provides. *See United States v. Reorganized CF & I Fabricators of Utah, Inc.,* 518 U.S. 213, 228–229, 116 S.Ct. 2106, 135 L.Ed.2d 506 (1996); *United States v. Noland,* 517 U.S. 535, 543, 116 S.Ct. 1524, 134 L.Ed.2d 748 (1996).

*Raleigh v. Ill. Dep't of Revenue,* 530 U.S. 15, 24, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000).

**20.** The trustee's objection to the AmEx proof of claim stated, *inter alia,* "In addition, it is possible, and no doubt likely, that the claim includes interest and other charges that are not reflected on the statement attached to the proof of claim, despite the fact that section 4 of the proof of claim requires that the claimant, if it is seeking interest and other charges in addition to the principal, to so indicate and to attach an itemized statement of all interest or additional charges." As to eCast's claim, the trustee objected in similar terms.

The objection was sufficiently substantial to overcome the possibility that the proofs of claim would be given *prima facie* evidence of the claims' validity as general unsecured claims. Unless one accepts the silly sidestep suggested by AmEx and eCast, it is virtually inconceivable that a credit card claim would not include interest and "other charges." "There are two kinds of creature in the jungle: the tiger and the iguana. The tiger sets the fees, and the iguana pays them." Mark Halperin, *Memoir from Antproof Case* at 463 (Harcourt Brace & Co.1995). Credit card issuers are the tigers of consumer finance. *See* Testimony of Elizabeth Warren, Leo Gottlieb Professor of Law, Harvard Law School, before the U.S. Senate Committee on Banking, Housing, and Urban Affairs hearings "Examining the Billing, Marketing, and Disclosure Practices of the Credit Card Industry, and Their Impact on Consumers" (January 25, 2007); *see also* Johnson M. Tyler, "Exempt Income Protection Act Better Protects Strapped Debtors," N.Y. Law Journal, Jan. 27, 2009, at 4; U.S. General Accounting Office, "Credit Cards: Increased Complexity in Rates and Fees Heightens Need for More Effective Disclosure to Consumers" (GAO 06–929) (October, 2006); Tamara Draut, "The Plastic Safety Net, the Reality Behind Debt in America" (2005) (report released by public policy groups, Demos and the Center for Responsible Lending, discussing the truth behind the credit card debt explosion in the United States); Mitchell Pacelle, "Growing Profit Source for Banks: Fees From Riskiest Card Holders," Wall St. J., July 6, 2004 at A1

The creditors' defense to the trustee's objection on this score belies their denial that interest and other charges made up part of their claim. They assert that, because interest and other assessments cease when a credit card account is "canceled" on the bankruptcy filing, and as the amount claimed on the proof is the sum total of all that is owed on the petition date, the only "practical characterization" of what is claimed must be that it is entirely "principal."

The defects in the creditors' logic are manifest. Their claims are not composed purely of principal just because they say so.[21] The trustee is entitled to know what charges were assessed and the contractual basis for each charge. These creditors not only denied that interest or other charges were included in their claims, they failed to provide itemizations sufficient for the trustee to ascertain the bases for the claims or the effective terms of the credit agreements in force at the time the accounts were debited.[22]

The components of a claim can be critical. Examining a claim in light of interest and fees added to the account prepetition may have a lot to say about all or part of the claim's allowance (say, should consumer protection laws be implicated). In addition, by assigning lower priority to claims to the extent they include fines, penalties, forfeitures, or damages that are not compensation for "actual, pecuniary loss," the Code promotes equal treatment for creditors, aiming to distribute funds in respect to actual losses, before channeling them to pure penalties.[23]

Citing *Smiley v. Citibank (South Dakota), N.A.*, 517 U.S. 735, 116 S.Ct. 1730, 135 L.Ed.2d 25 (1996), AmEx and eCast contend that they were not required to identify the prepetition interest and other charges that contributed to their claim because such charges can never be relegated to the subordinated priority of § 726(a)(4). To begin, *Smiley* addressed the enforceability of late charges imposed by a credit card issuer against its customer. Although the Court held that, in accordance with interpretations announced

(reporting that credit card fees in 2003 rose to 33.4 percent of total credit card revenue, and that the credit card industry reaped $ 11.7 billion from penalty fees).

21. "If you call a tail a leg, how many legs does a dog have? Four. Calling a tail a leg does not make it a leg." Abraham Lincoln, quoted in *United States v. Bowen*, 527 F.3d 1065, 1077 n. 9 (10th Cir.2008).

22. We recognize that proofs of claim may properly be accompanied by summaries, rather than voluminous records displaying every jot and tittle of account history. *See* Fed. R. Bankr.P. 3001(a) (providing that proof of claim shall conform substantially with appropriate Official Form); Official Form 10 (directing claimant to attach documents to support the claim or, if voluminous, a summary of such documents); *see also Dove–Nation*, 318 B.R. at 151 (concluding that claimant complied substantially with rules by identifying the claims, attaching summaries of

claims, providing explanations why additional documentation was not attached, and providing instructions to request additional documentation if desired); *In re Cluff*, 2006 WL 2820005, *12–13 (D.Utah Sept.29, 2006) (concluding that bankruptcy court did not err in declining to disallowed unsecured claims solely for insufficiency of attached documentation); *In re Heath*, 331 B.R. at 432. A reasoned, case-by-case approach, taking into account detail provided, content of the schedules, the identity of the objector (e.g., trustee or debtor) is appropriate.

23. Section 726(a), while elevating certain unsecured claims over others for policy reasons, *see* § 726(a)(1), also assures that recompense for actual pecuniary loss is not diluted by including noncompensatory "losses" at an equal priority. *See* § 726(a)(4). Indeed, allowed, tardily filed claims for actual losses are paid before noncompensatory fines, penalties, forfeitures, and damages. *See* § 726(a)(3).

by the Comptroller of Currency pursuant to the National Bank Act, the late charges constituted "interest" and were enforceable, it did not address bankruptcy priorities and limited its holding to fees imposed as commercial compensation, rather than penalties. *Id.* at 746–47. Moreover, *Smiley* addressed enforceability of a contractual late charge provision in a bilateral dispute between creditor and debtor, ignoring the implications of bankruptcy-a collective proceeding aimed at providing similarly situated creditors fair, *pro rata* distributions from a bankruptcy estate. "In bankruptcy courts, penalties are not in accordance with the goal of equity because they inevitably favor one creditor to the disadvantage of the other creditors." *In re Rally Partners, L.P.*, 306 B.R. 165, 170 (Bankr.E.D.Tex.2003).[24]

## 2. The Failures of Proof

Faced with the trustee's objections to their claims, and his insistence that the creditors provide sufficiently detailed account summaries so that he could ascertain the nature, amount, and timing of, as well as the contractual bases for, the interest and other charges bound up in their claims, AmEx and eCast simply stonewalled. By refusing to provide or introduce evidence that established the nature of such charges, they failed to sustain their burden of demonstrating their claims (now their allowed claims) should be entitled, in their full amounts, to share in the estate as general unsecured claims. At the same time, neither creditor has provided the information necessary to discern what parts, if any, of their claims should be accorded general unsecured status under § 726(a)(2) and what parts might be provided lower priority under § 727(a)(4).

Under the circumstances, we conclude that, although allowed, the AmEx and eCast claims must be paid (entirely) only to the extent funds are available for distribution to § 726(a)(4) priority creditors. The consequences of their failures of proof must be visited on them alone, rather than on the estate's creditor constituents generally. *Cf. McMillan*, 555 F.3d at 226 (concluding that claimant had not demonstrated that certain component of his claim was entitled to administrative expense priority and, therefore, was appropriately relegated to status as general unsecured claim); *In re Uly–Pak, Inc.*, 128 B.R. 763 (Bankr. S.D.Ill.1991) (concluding that claimant's severance pay claim did not constitute an administrative expense entitled to priority under § 726(a)(1) and therefore was entitled only to general unsecured status). To do otherwise would be to risk diluting the dividend of creditors who had sustained pecuniary losses.

## II. The Trustee's Fee Request

The trustee argues that the bankruptcy court erred in denying his request for

---

**24.** Contractually based charges have been determined to be penalties or forfeitures. Sometimes this results in their nonenforceability, and, thus, disallowance. 11 U.S.C. § 502(b)(1); *see, e.g.*, In re *Leatherland Corp.*, 302 B.R. 250, 264 (Bankr.N.D.Ohio 2003) (concluding that "success fee" was in nature of unenforceable penalty and not allowable); *In re Shepherds Hill Dev. Co., LLC*, 2000 WL 33679427 (Bankr.D.N.H. Jun.6, 2000); *In re Rally Partners*, 306 B.R. at 170; *In re Timberline Prop. Dev., Inc.*, 136 B.R. 382, 386–87 (Bankr.D.N.J.1992); *In re Jordan*, 91 B.R. 673 (Bankr.E.D.Pa.1988); *In re White*, 88 B.R. 498 (Bankr.D.Mass.1988). Sometimes, though enforceable, such claims are relegated to § 726(a)(4) status. *See Crawford v. Ajax Enterp., LLC (In re Pheasant Cove, LLC)*, 2008 WL 187529, 2008 Bankr.LEXIS 393 (Bankr.D.Idaho Jan. 18, 2008); *Fundex Cap. Corp. v. Balaber-Strauss (In re Tampa Chain Co., Inc.)*, 53 B.R. 772, 781–82 (Bankr. S.D.N.Y.1985); 4 *Norton Bankr.Law and Practice 3d*, §§ 83:2 n. 7 and 85:6 (noting that the former provision, § 57j of the Bankruptcy Act, disallowed any penalty-type debts, but under § 726(a)(4), penalty-type debts are subordinated, but not disallowed).

attorney's fees as the prevailing party in the underlying claims objection pursuant to N.H.Rev.Stat. Ann. § 361–C:2. The trustee asserts that the bankruptcy court's ruling was premature, "as the issue was not joined by either AmEx or eCast and the bankruptcy court should have provided the parties with an opportunity to obtain discovery and to present arguments on the issues."

■ "It is well settled that arguments made in a perfunctory manner below are deemed waived on appeal." *F.D.I.C. v. World Univ., Inc.*, 978 F.2d 10, 16 (1st Cir.1992). "It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." *U.S. v. Zannino*, 895 F.2d 1, 17 (1st Cir.1990).

■ Here, the trustee did not request attorney's fees as part of his initial claims objection, but asserted it in a single paragraph in his reply to AmEx's and eCast's response to his claims objection (filed on June 6, 2006). App. Tab E, at 89. AmEx and eCast did not file any further responsive pleading and therefore did not object to or otherwise address this issue. It is unclear whether the issue was raised and/or argued at the June 13, 2009, hearing on the claims objection as the trustee has not provided a copy of the transcript on appeal. Although the parties filed post-hearing supplemental briefs, none (including the trustee) addressed the issue.

No basis exists upon which to determine that the trustee made anything other than a perfunctory argument regarding his claim for attorney's fees before the bankruptcy court. Therefore, we will not address the issue here. *See World Univ.*, 978 F.2d at 16.

*CONCLUSION*

Because the trustee concedes the estate's liability for the debts to AmEx and eCast, their claims must be deemed allowed. But because we conclude that AmEx and eCast failed to prove their claims were entitled to general unsecured status, they must be afforded priority under § 726(a)(4), rather than § 726(a)(2). Because the trustee has not demonstrated he raised more than a perfunctory argument regarding his request for attorney's fees below, he has waived that argument, and the bankruptcy court's denial of his request will stand.

We therefore **AFFIRM** the allowance of eCast's claim, **REVERSE** disallowance of AmEx's claim, and order that each is entitled to treatment under § 726(a)(4). We also **AFFIRM** the disallowance of the trustee's request for a fee award.